Plaintiff-appellant James Young ("husband") appeals the May 13, 1998 Decree of Divorce by the Licking County Court of Common Pleas, Domestic Relations Division. Husband also appeals the May 12, 1998 Judgment Entry in which the Licking County Court of Common Pleas, Domestic Relations Division, overruled his objections to the Magistrate's Decision filed January 28, 1998. Defendant-Appellee is Diane Young ("wife").
 STATEMENT OF THE FACTS AND CASE
The May 13, 1998 Decree of Divorce ended a 26 year marriage. The parties met in college and were married November 26, 1971. At the time of the marriage, wife was pregnant with the only child born as issue of the marriage. Both husband and wife dropped out of college to raise their family. Each had the expectation husband would be the breadwinner of the family and wife would not work outside the home.
The parties enjoyed an excellent standard of living throughout the marriage, owning a beautiful home and taking numerous trips. While husband did not have a steady income, his accomplishments as an entrepreneur allowed the parties to live from the assets and monies generated by the sale of his businesses.
Husband was initially employed with his father's construction and waste transfer business, but started a similar business of his own when his father became ill. Husband sold his business in 1983 for "around one million dollars." T. at 10. Husband then went back to work for his father and eventually assumed control of his father's business in 1985. Husband sold this business in 1989 for "about one point five million dollars." T. at 14.
From 1989 until 1992, husband testified he "primarily managed the funds he acquired from the two sales." T. At 15. In 1992, husband started another business, a newspaper called 50 plus. This business was still under husband's control as of the date of trial.
Wife took her first job outside the home in February, 1991, nearly twenty years after the parties married. This position was an entry level clerk with State Farm. Even though wife earned two promotions in the three years she worked with State Farm, she was eventually asked to return to her entry-level position due to poor performance. Wife elected to leave the company, ending her employment in November, 1994.
Husband filed for divorce April 29, 1996. A partial agreement was reached in mediation, and the matter came on for final contested divorce trial on March 27 and May 28, 1997. On September 18, 1997, the magistrate issued a decision. This decision was subsequently clarified in a separate magistrate's decision filed October 2, 1997. The parties filed objections, and on January 20, 1998, the court issued its ruling on the objections.
On January 22, 1998, husband filed his request for findings of fact and conclusions of law regarding the trial court's ruling. After the parties filed proposed entries, the trial court filed its Findings of Fact and Conclusions of Law on May 5, 1998. The Judgment Entry/Decree of Divorce was filed on May 13, 1998. It is from this judgment entry husband prosecutes part of this appeal.
Husband also appeals a May 5, 1998 Judgment Entry finding him in contempt for his failure to obey court orders to pay temporary spousal support. On February 12, 1997, the magistrate issued a temporary order requiring appellant to pay $3,000 per month in spousal support. Appellant filed a motion to set aside this ruling, but the motion was denied by the trial court in a Judgment Entry filed April 29, 1997. Accordingly, until otherwise modified by the trial court, Appellant was responsible for the temporary spousal support.
On May 8, 1997, Husband filed a motion for clarification of the trial court's April 29, 1997 Judgment Entry. The trial court issued the requested clarification in a June 12, 1997 entry, again adopting the magistrate's order for the attorney allowance and for temporary spousal support.
Husband continued to refuse to make spousal support payments, and on July 10, 1997, wife filed a motion to show cause and for attorney fees. A hearing on the motion was set for September 26, 1997.
At husband's request, the hearing on the motion for contempt was continued; the hearing was conducted on January 26, 1998. The magistrate filed a decision on January 28, 1998, memorializing the oral hearing, and finding husband in contempt. On February 11, 1998, husband filed a Motion to Continue Time in which to File Objections to the Magistrate's Decision. The court granted this extension and the objections were filed on March 4, 1998.
On May 12, 1998 the court filed a Judgment Entry overruling husband's objections to the magistrate's decision with regard to the contempt. The following day the decree of divorce was filed. It is from these two decisions appellant prosecutes his appeal, assigning the following errors:
 I. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN AWARDING THE APPELLEE BOTH TEMPORARY AND PERMANENT SPOUSAL SUPPORT AND IN FINDING THE APPELLANT IN CONTEMPT AND SENTENCING HIM TO A JAIL TERM AND REDUCING THE TEMPORARY SPOUSAL SUPPORT AWARD TO JUDGMENT.
 II. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN VALUING THE APPELLANT'S BUSINESS, THUS RESULTING IN AN INEQUITABLE DIVISION OF THE MARITAL ASSETS BY REASON OF THE OVERESTIMATE OF THE ASSETS.
 III. THE TRIAL COURT ERRED IN FINDING THAT THERE WERE FUNDS ON DEPOSIT AT FIRST FEDERAL SAVINGS AND LOAN OF NEWARK, OHIO, IN THE AMOUNT $7,440.
 IV. THE COURT ERRED WHEN IT FAILED TO UNDERTAKE A DE NOVO DETERMINATION OF APPELLANT'S OBJECTIONS AND TO ENTER ITS OWN, INDEPENDENT ANALYSIS OF THE FACTS AND CONCLUSIONS OF LAW BEYOND THAT OF THE MAGISTRATE'S.
Husband filed two separate notices of appeal. The first notice, filed June 8, 1998, is the appeal from the Decree of Divorce. It was assigned case number 98CA56. The second notice of appeal, filed August 4, 1998, is the appeal of the contempt finding. It was assigned case number 98CA79. This court consolidated the cases in an August 31, 1998 Judgment Entry.
 Ia
The first part of appellant's first assignment of error challenges the propriety of the spousal support order contained in the Decree of Divorce filed May 13, 1998.
A review of a trial court's decision relative to spousal support is governed by an abuse of discretion standard.Cherry v. Cherry (1981), 66 Ohio St.2d 348. We cannot substitute our judgment for that of the trial court unless, when considering the totality of the circumstances, the trial court abused its discretion. Holcomb v. Holcomb (1989), 44 Ohio St.3d 128. In order to find an abuse of discretion, we must determine that the trial court's decision was unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217. We must look at the totality of the circumstances in the case sub judice and determine whether the trial court acted unreasonably, arbitrarily or unconscionably.
The graduated five year schedule required appellant to pay $3,000 per month for the first two years; $2000 per month for the year thereafter; and $1,000 per month for the final two years. Because appellant was delinquent in payment of the temporary spousal support ordered during the pendency of the divorce case, the Decree of Divorce also awarded wife any arrearage due. Husband was also subject to any future arrearages or penalties on contempt.
Husband argues the magistrate failed to properly analyze the award of spousal support. However, the trial court conducted an independent review of the magistrate's decision and entered its own findings of fact and conclusions of law on May 5, 1998.
Pursuant to R.C. 3105.18(C)(1), trial courts are to consider certain factors in making determinations of spousal support:
 (C)(1) In determining whether spousal support is appropriate and reasonable, and in determining the nature, amount, and terms of payment, an duration of spousal support, which is payable either in gross or in installments, the court shall consider all of the following factors:
 (a) The income of the parties, from all sources * * *;
(b) The relative earning abilities of the parties;
 (c) The ages and the physical, mental, and emotional conditions of the parties;
(d) The retirement benefits of the parties;
(e) The duration of the marriage;
 (f) The extent to which it would be inappropriate for a party, because he will be custodial of a minor child of the marriage, to seek employment outside the home;
 (g) The standard of living of the parties established during the marriage;
 (h) The relative extent of education of the parties;
 (i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;
 (j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;
 (k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;
 (l) The tax consequences, for each party, of an award of spousal support;
 (m) The lost income production capacity of either party that resulted from that party's marital responsibilities;
 (n) Any other factor that the court expressly finds to be relevant and equitable.
In the May 5, 1998 Findings of Fact and Conclusions of Law, the trial court dedicated over four pages to the analysis of the facts in light of the above-quoted statutory factors. Of particular importance to the Court was the appellant's track record as a prudent businessman with a demonstrated ability to build businesses into valuable assets; the length of the marriage; retirement assets; the standard of living during the marriage; the educational background of the parties, and employment history; the relative assets of the parties; and the potential of either party to seek further education or training.
On the issue of income, the trial court pointed out husband did have an average annual nominal earned income of only $11,745 per year for the period 1979-1996. (Finding of Fact 40 at 8). However, during that same period, husband's average deferred income was $117,265 per year, for a total average of $129,010 per year. (Finding of Fact 40 at 8). This was, of course, significant to the final determination of a "reasonable and appropriate" award of spousal support.
The trial court then analyzed the expectations of the parties, noting wife left college to marry appellant when she became pregnant with the only child of the marriage: "Although [husband] also left college, because of [wife's] duties as a homemaker, [wife] did not have the opportunity to develop meaningful job skills during the marriage." (Conclusion of Law 16 at 20).
After weighing the statutory factors, the court found it appropriate to provide wife with a reasonable period of spousal support "to allow her to reenter employment without jeopardizing her retention and use of the assets awarded to her." (Conclusion of Law 17 at 20). This Court can find no abuse of discretion in the trial court's finding spousal support to be "reasonable and appropriate" nor in its determination as to the amount and duration thereof.
This portion of husband's first assignment of error also requests this Court to find error in the award of permanent spousal support. We do not read the trial court's entry as providing for permanent spousal support, but rather a spousal support order of limited duration. Accordingly, we find this portion of the argument is without merit.
 Ib
Husband next argues the trial court erred in finding him in contempt, sentencing him to a jail term for such contempt, and reducing the temporary support award to judgment. This second appeal, under Case Number CA-98-79, is taken from the May 12, 1998 Judgment Entry finding husband in contempt. The standard of review of a trial court finding of contempt is abuse of discretion. State ex rel. Ventrone v. Birkel (1981), 65 Ohio St.2d 10.
Appellant bears the burden of showing error by reference to matters in the record. Knapp v. Edwards Lab. (1980), 61 Ohio St.2d 197,199. "When portions of the transcript necessary for resolution of assigned errors are omitted from the record, the reviewing court has nothing to pass upon and thus, as to those assigned errors, the court has no choice but to presume the validity of the lower court's proceedings, and affirm." Id.
Appellant's brief on the second appeal (CA-98-79) contains the following argument with regard to the contempt issue: "Please see Plaintiff-Appellant's argument at Assignment of Error 1 of his Brief of August 10, 1998." This Court has reviewed the argument as requested.
There is no argument made as to the contempt proceedings, no reference to errors committed by the trial court in the finding of contempt, and no reference to the record. The argument addresses only the propriety of any spousal support award. The transcript of the contempt hearing is part of the record on appeal, however, no reference was made to this transcript and no specific error was articulated. This Court will not speculate on potential errors at the contempt hearing or in the finding of contempt.
Accordingly, the second portion of appellant's first assignment of error is overruled.
 II
Husband's second assignment of error maintains the trial court abused its discretion in valuing husband's business. He asserts the testimony at trial provided no rational basis or explanation for the $19,000 valuation placed on the business. Further, appellant argues because the valuation of the business was incorrect, the subsequent division of marital assets is incorrect.
A review of a trial court's division of marital property is governed by an abuse of discretion standard. Martin v. Martin
(1985), 18 Ohio St.3d 292. We cannot substitute our judgment for that of the trial court unless, when considering the totality of the circumstances, the trial court abused its discretion. Holcomb v. Holcomb (1989), 44 Ohio St.3d 128. In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgement.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217.
Because husband argues a the trial court erred in the determination of a finding of fact (the value of husband's business), we review the trial court's decision as to that specific finding of fact under a manifest weight of the evidence standard.
We are not fact finders; we neither weigh the evidence nor judge the credibility of witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. Cross Truck v.Jeffries (Feb. 10, 1982), Stark App. No. CA-5758, unreported. Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. C.E. Morris Co. v. Foley Construction (1978), 54 Ohio St.2d 279.
The business valued by the trial court was a small newspaper aimed at individuals over the age of fifty. The newspaper was free to the public and earned all revenue through advertising. At the divorce trial, the parties presented expert testimony relative to the value of the business.
Wife offered the testimony of Mark Richmond, a Publisher. Tr. at 140. Mr. Richmond testified husband's business was worth between $75,000 and $80,000. Tr. at 144. Mr. Richmond indicated this was a conservative estimate. Id. On cross examination, Mr. Richmond conceded a large part of the value was related to husband's association with the business. Because the business earned revenue solely through advertising, the personal relationships husband developed with his advertisers was particularly significant in any valuation. Tr. at 155.
In rebuttal, husband presented the testimony of William Weidaw, a certified public accountant and an attorney licensed to practice in the State of Ohio. Mr. Weidaw opined the business had no meaningful value as of the date of trial. Tr. at 297. This opinion was based on the fact husband's business had failed to demonstrate an earnings history. Tr. at 298.
After an analysis of the gross and net incomes of the business, and considering the testimony of the experts, the trial court stated:
 27. The court finds credible the testimony of defendant's expert, Mark Richmond. Mr. Richmond has experience in the buying and selling of publications like 50 Plus. Mr. Richmond testified that 50 Plus could be sold in a range of $60,000 to $80,000. Notwithstanding this testimony the court finds the firm of 50 Plus to have a fair market value of only $19,000. In making this determination the court finds the plaintiff's role and involvement in this enterprise are an essential element of its value.
(Finding of Fact 27).
Husband argues the trial court randomly valued the business at $19,000 because that is the amount of profit the business made in 1996. We disagree.
The trial court specifically expressed part of its determination of the value of the business was the continued association and presence of appellant. Therefore, reducing the valuation to $19,000, the amount of the profit made in 1996, has some rational basis and is consistent with the testimony that the value of the business was diminished without appellant's continued association. Because the trial court based its valuation on competent, credible evidence, this Court finds its decision was not against the manifest weight of the evidence.
Because the factual finding was not against the manifest weight of the evidence, this Court finds no abuse of discretion in the use of that finding for a final division of marital assets. Appellant's second assignment of error is overruled.
 III
We will not address the third assignment of error as it was withdrawn at oral argument.
 IV
In husband's fourth assignment of error claims the trial court failed to undertake a de novo determination of his objections to the magistrate's decision and to enter its own independent analysis of the facts and conclusions of law. Husband maintains that the review of the magistrate's temporary orders and decisions was "given little attention" by a "visiting judge".
The record is inapposite to husband's contentions. For example, the magistrate awarded the residual tax loss carry forward to husband. (Magistrate's Decision at 14). The trial court disagreed, and ordered the tax loss carry forward to be equally divided between the parties. (Findings of Fact at 12). Additionally, while the magistrate ordered husband to pay wife's attorney fees incurred in the divorce action (Magistrate's Decision at 19-20), the trial court found wife had "the ability with her assets to pay her own attorney fees." (Findings of Fact at 21). Far from rubber stamping the magistrate's decision, the trial court agreed with husband's objection in ordering wife to pay her own attorney fees. Accordingly, this Court finds the record demonstrates the trial court conducted an independent review of appellant's objections to the magistrate's decision.
Appellant's fourth assignment of error is overruled.
The judgment of the Licking County Court of Common Pleas, Domestic Relations Divisions, is affirmed.
By: Hoffman, J., Wise, P.J. and Farmer, J. concur.
-----------------------
-----------------------
 ----------------------- JUDGES
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Licking County Court of Common Pleas, Domestic Relations Division, is affirmed. Costs assessed to appellant.
-----------------------
-----------------------
 ----------------------- JUDGES